**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **AMOS FENDERSON, #R-04427,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-00333-MJR** |
| | ) | |
| **LT. ERICKSON, C. WALL,** | ) | |
| **OFFICER WALKER,** | ) | |
| **OFFICER SHEHORN, and** | ) | |
| **JANE DOE NURSES 1 and 2,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Amos Fenderson, an inmate currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts constitutional and supplemental state law claims arising out of events that occurred at Lawrence Correctional Center ("Lawrence"). (Doc. 1).

**Merits Review Under 28 U.S.C. § 1915A**

The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## <u>The Complaint</u>

On December 5, 2012, Plaintiff was transferred to Lawrence Correctional Center. (Doc. 1, p. 4).  Upon his arrival, Plaintiff informed the intake lieutenant that he was a Messianic Hebrew and requested a kosher diet tray.  He was directed to speak with Defendant Shehorn regarding his request. *Id*.

Upon hearing Plaintiff's request, Defendant Shehorn (a correctional officer) replied, "You won't be getting any special treatment here, and you won't dictate how we operate down here, you will eat what every other inmate eats.  If you have any complaints address them to your counselor." *Id*.  Plaintiff became upset and demanded to speak with a sergeant or lieutenant. Defendant Shehorn denied Plaintiff's request and told him to go to his cell.  *Id*. at 5.  Plaintiff refused and again demanded to speak with a sergeant or lieutenant.  At this point, Defendant Shehorn grabbed Plaintiff's shoulder and tried to forcefully move Plaintiff in the direction of his cell.  Plaintiff refused to move and "warned Defendant Shehorn that he had no right to rough house him." *Id*.  Defendant Shehorn ordered Plaintiff to lock up.  Plaintiff continued to refuse and verbally argue with Shehorn.  Shehorn again ordered Plaintiff to lock up, but before Plaintiff could respond, Defendant Wall (a correctional officer) grabbed Plaintiff from behind. *Id*.

Defendants Wall and Shehorn then picked Plaintiff up and "slammed" him to the ground.

*Id*. at 6.  Defendant Wall repeatedly struck Plaintiff in the head and then immobilized Plaintiff by placing his forearm against Plaintiff's neck.  Next, Defendants Erickson (a lieutenant) and Walker (a correctional officer) arrived.  Defendant Walker "lunged" on to Plaintiff's lower back to apply hand restraints.  While Defendants Erickson, Walker and Shehorn were subduing Plaintiff, he said, "All that I wanted was my tray."  *Id*.  Shehorn then took Plaintiff's right leg and bent it backward, yelling, "I'll break it.  Say another word about a tray and I'll break it." *Id*. at 6-7.  Shehorn continued to bend Plaintiff's leg backwards while Plaintiff yelled out in pain, "My leg! My leg!"  No one attempted to intervene.

Next, Defendant Erickson ordered the officers to place Plaintiff in leg restraints.  Plaintiff did not resist, but he complained about the pain in his leg.  *Id*. at 7.  Erickson then asked Defendant Jane Doe Nurse #1 if she wanted to examine Plaintiff's leg.  She shrugged and asked Plaintiff if he was bleeding anywhere.  Plaintiff, who was crying, said he didn't know.  Jane Doe Nurse #1 made no attempt to examine Plaintiff's injuries.  *Id*.

Defendant Erickson then ordered the officers to place Plaintiff in a suicide segregation cell, where he was shackled to a metal bed frame. *Id*. at 8.  Plaintiff's leg was causing him significant pain and he pleaded with Defendant Erickson to receive medical attention. Erickson refused Plaintiff's request, stating, "There's nothing wrong with you." *Id*.

A few minutes later, Defendant Erickson and other staff returned to remove the handcuffs and shackles.  Plaintiff continued to beg for medical attention, but Erickson denied his requests and Plaintiff was left alone in his cell.  *Id*. at 9.  As Plaintiff's knee began to swell up, he panicked and yelled for help, but no one came.  Finally, Defendant Jane Doe Nurse #2 arrived on the unit and began to hand out medications to the other inmates.  Plaintiff told her that his leg was in pain, but she simply walked away.  *Id*.

Later, Defendant Erickson returned to Plaintiff's cell and informed him that he would be leaving Lawrence. *Id.* at 10. While he was being strip searched, Plaintiff continued to request medical attention and showed Defendant Erickson his swollen knee. Erickson said, "Yeah it does appear to be swollen, but that's your problem." *Id.* Defendant Erickson then gave Plaintiff a disciplinary report charging him with assaulting Defendant Shehorn with a closed fist.

Plaintiff was then transported to Menard Correctional Center ("Menard") where he received medical attention for the first time since the assault occurred, more than nine hours earlier. *Id.* at 11. Medical records from Menard note that Plaintiff was seen in the healthcare unit there at 2:35 a.m. on December 6, 2012. *Id.* at 32. The record states, "No information/documentation received in regards to this injury." *Id.* Additionally, the record notes moderate swelling around Plaintiff's right knee. An x-ray taken later that day found "calcified density along the mid aspect of the knee which may be that of a fracture of the medial tibial spine." *Id.* at 33. Plaintiff maintains that none of the officers involved in the assault submitted a written report detailing Plaintiff's injuries, as required by the Illinois Department of Corrections. *Id.* at 10.

## Analysis

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Constitutional Claims**

    **Count 1: Excessive Force**

    The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983.  *See Wilkins v. Gaddy*, 559 U.S. 34 (2010).  An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir.2004).  An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim; at the same time, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

    Here, Plaintiff alleges that Defendants Wall and Shehorn used excessive force against him without any apparent penological justification when they slammed Plaintiff's body into the ground.  Plaintiff further alleges that Defendant Wall then repeatedly struck him in the head and Defendant Shehorn bent his leg back so far that he fractured Plaintiff's leg.  Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has articulated a colorable excessive force claim against Defendants Wall and Shehorn.

    In addition, Plaintiff claims that Defendant Walker "lunged" onto his back in order to

handcuff him from behind.  However, he never alleges that the force used by Walker was excessive.  Likewise, Plaintiff raises an excessive force claim against Defendant Erickson, but he never alleges that Defendant Erickson personally used excessive force on him.  Instead, Plaintiff asserts that Defendants Erickson and Walker stood by and failed to intervene while Defendants Wall and Shehorn used excessive force.  As presently drafted, these allegations constitute actionable failure to intervene claims rather than an excessive force claims.  As will be discussed below, Defendants Walker and Erickson may be liable for failing to intervene on the alleged use of excessive force by Defendants Wall and Shehorn, but they cannot be held liable on a claim of excessive force unless they personally used force that was excessive and without penological justification.  Plaintiff has failed to allege that they did.  Therefore, he may not proceed on the excessive force claim against Defendants Walker and Erickson.

### Count 2: Failure to Intervene

Under certain circumstances, "a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir.1994).  An inmate asserting a failure to intervene claim under § 1983 against officers who were present when the inmate's constitutional rights were violated by a different officer, must show that the officers had reason to know that excessive force was being used, and the officers had a "realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison,* 324 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin,* 37 F.3d 282, 284 (7th Cir.1994)).

Plaintiff claims that Defendants Walker and Erickson were present and observed Defendants Wall and Shehorn using excessive force, but failed to intervene.  The circumstances surrounding the alleged use of excessive force are questions of fact that cannot be resolved at this stage.  *See Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997) ("Whether

an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.")  Therefore, Plaintiff may proceed on his failure to intervene claim against Defendants Walker and Erickson.

### Count 3: Denial of Medical Care

To plead an Eighth Amendment medical needs claim, a complaint must allege two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. *See Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir.2006); *see also Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011).  The Seventh Circuit has held that a medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).  To establish that an official acted with deliberate indifference, a plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Specifically, officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Moreover, "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *see also Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996).

Regardless of whether the force used by officers was justified, Plaintiff's leg was fractured during the altercation.  He was in significant pain and repeatedly requested medical

attention.  He alleges that Defendants Erickson, Jane Doe Nurse #1, and Jane Doe Nurse #2 ignored his pleas. Plaintiff received medical care only upon his arrival at Menard Correctional Center, over nine hours after the injury occurred.  Plaintiff may proceed on his claim of denial of medical care against Defendants Erickson, Jane Doe Nurse #1, and Jane Doe Nurse #2.

**Count 4: Retaliation**

Plaintiff asserts that Defendant Shehorn threatened and then used excessive force on him because he was demanding a religious diet tray.  Even if the use of force was not unconstitutionally excessive, if it was used in retaliation for the exercise of a constitutionally protected right (in this case, the right to freely exercise one's religion under the First Amendment), then it is actionable under § 1983.  *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987).

At issue here is whether Plaintiff experienced an adverse action that would likely deter constitutionally protected activity in the future, and if the First Amendment activity was "at least a motivating factor" in Defendant Shehorn's decision to use excessive force.  *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).  This is a question that cannot be resolved at the pleadings stage of this case.  Thus, Plaintiff may proceed on his retaliation claim against Defendant Shehorn at this time.

**<u>Supplemental State Law Claims</u>**

In addition to the constitutional law claims, Plaintiff asserts Illinois state law claims. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).  "A loose

factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Plaintiff's state law claims (negligence, battery, and assault) arise out of the same events that gave rise to his federal claims. As such, the Court will exercise supplemental jurisdiction over these additional state law claims.

**Count 5: Negligence**

Under Illinois law, to plead a cause of action for negligence, a plaintiff must plead that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.,* 660 N.E.2d 863, 867 (1995).

Plaintiff asserts that Defendants Wall, Shehorn, Erickson, Jane Doe Nurse #1, and Jane Doe Nurse #2 had a duty to ensure his safety and well-being. He further asserts that Defendants Wall and Shehorn breached that duty when they failed to "ensure Plaintiff's safety and prevent the least amount of injury" to Plaintiff once he was "effectively subdued to the ground." (Doc. 1, p. 16). Moreover, he maintains that Defendants Erickson, Jane Doe Nurse #1, and Jane Doe Nurse #2 breached their duty when they refused Plaintiff's request for medical attention for his injury. Whether pursuing these allegations under the umbrella of a common law negligence claim makes the most sense remains to be seen; if Plaintiff's intention was to raise a medical malpractice claim against Jane Doe Nurses #1 and #2, he is advised that he must comply with the requirements for bringing a medical malpractice claim under Illinois state law. *See* 735 Ill. Comp. Stat. §5/2-622(a). However, at this stage, Plaintiff may proceed on his claim of negligence against Defendants Wall, Shehorn, Erickson, Jane Doe Nurse #1, and Jane Doe Nurse #2.

### Count 6: Assault

An assault, under Illinois law, is "conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12–1(a); *see also Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (noting that assault involves "(1) a threatening *gesture,* or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an *imminent* battery.") (emphasis in original).

Plaintiff alleges that Defendant Shehorn grabbed his leg and threatened, "I'll break it, say another word about a tray and I'll break it," which caused Plaintiff to fear that Shehorn would in fact break his leg. (Doc. 1, p. 18).  Based on these allegations, Plaintiff may proceed on his assault claim against Defendant Shehorn.

### Count 7: Battery

Under Illinois law, "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.'"  *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 Ill. Comp. Stat. 5/12–3(a)).  Plaintiff has clearly alleged sufficient facts to state a claim of battery against Defendants Shehorn and Wall.

### <u>Disposition</u>

**IT IS HEREBY ORDERED** that the following claims shall proceed:

Count 1:     Excessive force claim against Shehorn and Wall
Count 2:     Failure to intervene claim against Walker and Erickson
Count 3:     Denial of medical care claim against Erickson, Jane Doe Nurse #1, and Jane Doe Nurse #2[1]
Count 4:     Retaliation claim against Shehorn
Count 5:     Negligence claim against Shehorn, Wall, Erickson, Jane Doe Nurse #1, and Jane

---

[1] Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  Plaintiff has sufficiently stated claims against Jane Doe Nurse #1 and Jane Doe Nurse #2 and should be allowed the opportunity to discover the names of these individuals.

|          | Doe Nurse #2                              |
|----------|-------------------------------------------|
| Count 6: | Assault claim against Shehorn             |
| Count 7: | Battery claim against Shehorn and Wall    |

The Clerk of Court shall prepare for Defendants **SHEHORN, WALL, WALKER,** and **ERICKSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendants, and the Court will require Defendants to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the remaining Jane Doe Defendants (**NURSE #1** and **NURSE #2**) until such time as Plaintiff has identified these Jane Doe Defendants by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.

Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 23, 2015**

<u>s/ MICHAEL J. REAGAN</u>
Chief District Judge